# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:17CR00020-005 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **AMBER BILYEU,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Amber Bilyeu, Pro Se Defendant.*

The defendant Amber Bilyeu, proceeding pro se, has filed a motion seeking relief under 28 U.S.C. § 2255. The United States has filed a motion to dismiss, to which the movant has responded. For the reasons stated, I will grant the motion to dismiss and dismiss the § 2255 motion.

After pleading guilty, the defendant was sentenced by this court on March 20, 2018, to a term of 262 months imprisonment on Count One of the Indictment. Count One charged the defendant with conspiring to possess with the intent to distribute and distributing 500 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846.

In her § 2255 motion, the defendant contends that her counsel was ineffective in several ways. In Ground One, she asserts that her counsel was ineffective for "failing to adequately seek a downward departure for mental and

emotional conditions pursuant to [U.S. Sentencing Guidelines Manual ("USSG") §] 5H1:3." 2255 Mot. 5, ECF No. 693. In Ground Two, she claims her counsel was ineffective "for failing to argue the actual weight that the movant was responsable [sic] for and to the purity of the substance." *Id.* at 6. In Ground Three, Bilyeu asserts that her counsel was ineffective "when he didn't review the Pre sentencing report himself or with the Movant." *Id.* at 7. In Ground Four, she argues that her counsel was ineffective "when he failed to argue the upward variance for recruiter. There was no proof Movant was a recruiter [and] she was incarcerated for nine months of the conspiracy." *Id.* at 9.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that her sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The movant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ineffective assistance claims, however, are not lightly granted — "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686. To that end, a defendant must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's alleged deficient performance. *Id.* at 687. To satisfy the prejudice prong of *Strickland*, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* at 694.

A defendant who has pleaded guilty must demonstrate that, but for counsel's alleged error, there is a reasonable probability that she would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted).

Ground One of Bilyeu's 2255 motion must be dismissed because the record clearly reveals that her counsel did seek a downward departure on account of her history of mental health problems and her traumatic childhood. Bilyeu's attorney

stressed these factors both in a sentencing memorandum, ECF No. 495, and orally during the sentencing hearing. Sent. Hr'g Tr. 9–10, ECF No. 717. Bilyeu therefore cannot show that her counsel made any unprofessional error in this regard.

In stating the reasons for her sentence, I noted that "Ms. Bilyeu has had a very difficult childhood. Things happened to her that were very damaging." *Id.* at 13. I further stated, "There's no question that Ms. Bilyeu has had a terrible past life by any standards. . . ." *Id.*

USSG § 5H1.3 provides that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." The sentencing guidelines, of course, are not mandatory. *United States v. Booker*, 543 U.S. 220, 245 (2005).

In Bilyeu's case, I considered all the relevant factors, including her mental and emotional conditions and her troubled past. I concluded, however, that a downward departure was not warranted on this ground because the sentence I imposed, at the low end of the Guidelines range, appropriately reflected the seriousness of her crime, would protect the public from further crimes of the defendant, and would provide adequate deterrence. Bilyeu therefore has not

shown, and cannot show, prejudice as required by *Strickland*. Accordingly, I will grant the government's Motion to Dismiss as to Ground One.

In Ground Two, Bilyeu faults her attorney for not contesting the weight and purity of the methamphetamine for which she was held responsible at sentencing. The problem with this argument is that Bilyeu stipulated to the weight and purity in her plea agreement. She acknowledged this at her guilty plea hearing. The prosecutor stated, "Ms. Bilyeu, you have also agreed that your base offense level is 36, and that your offense involved at least 1.5 kilograms of ICE." Change of Plea Hr'g Tr. 16. I then asked, "are those terms just recited by Mr. Lee included in your plea agreement as you understand it?" *Id.* at 18. Bilyeu replied, "Yes, sir." *Id.* Because of her admission under oath and her stipulation in the plea agreement, Bilyeu cannot show that her counsel's later failure to challenge the weight and purity of the methamphetamine was an unprofessional error.

Bilyeu appears to be under the mistaken belief that she can only be held responsible for the amount of methamphetamine that was found in her immediate possession when she was arrested. In her response to the government's Motion to Dismiss, she asserts that she was only apprehended with 31 grams of weak methamphetamine. Mot. Opp'n 2, ECF No. 743. But Bilyeu was not convicted of possession of methamphetamine. Rather, she pled guilty to and was convicted of conspiring to possess with the intent to distribute and distributing 500 grams or

more of a substance containing methamphetamine. She can therefore be held responsible for criminal activity she jointly undertook with her coconspirators. *See* USSG § 1B1.3(a)(1)(B). The weight and purity to which she stipulated, 1.5 kilograms of ice, includes such jointly undertaken criminal activity.

During her guilty plea hearing, the prosecutor stated, and Bilyeu agreed, "that she was receiving methamphetamine from Grady Nester, Sanson Rodriguez and others, and then distributing it to a number of individuals in the Galax, Virginia and Surry County, North Carolina areas." Change of Plea Hr'g Tr. 27-28, ECF No. 715. In addition to admitting that the 31 grams of methamphetamine found in her vehicle belonged to her, Bilyeu also "admitted to her involvement in the distribution of methamphetamine and receiving methamphetamine from Sanson Rodriguez, and distributing that methamphetamine to Brittany Cochran and others." *Id.* at 28. When asked, "do you contest or dispute any of the facts just presented?" Bilyeu responded, "No, Your Honor." *Id.* at 29.

Moreover, as discussed at the sentencing hearing, Cochran testified before the grand jury that Bilyeu had asked if Cochran "wanted to do some work for her." Sent. Hr'g Tr. 3, ECF No. 717. When Cochran said yes, Bilyeu told her "to go back and get some money, which I did. It was about 400 to $800. And I went back and I got either seven or 14 grams, I'm not exactly for sure." *Id.* Thereafter, Cochran bought 14 grams of methamphetamine from Bilyeu for $800 every day or

- 6 -

every other day for a couple of months. *Id.* Based on this testimony, there was clearly sufficient evidence to hold Bilyeu responsible for well in excess of the 31 grams of methamphetamine that was found in her vehicle. Any attempt of her counsel to challenge the stipulated weight and purity with which Bilyeu was held responsible would have been futile, and she therefore cannot establish prejudice as required by *Strickland*.

In her response to the government's Motion to Dismiss, Bilyeu argues that she did not benefit from her plea agreement, that her plea was involuntary because she did not understand the terms of the plea agreement, and that had she known that she would have received a sentence of 262 months imprisonment, she would have proceeded to trial. These arguments are all undermined by Bilyeu's statements under oath during her guilty plea colloquy. The prosecutor advised her on the record, and she acknowledged, that the crime to which she was pleading guilty had a mandatory minimum sentence of ten years imprisonment and a maximum sentence of life imprisonment. I also advised her that her Guidelines range of imprisonment would not be determined until later and that I had the authority to impose a sentence that was more or less severe than the Guidelines range. Bilyeu indicated her understanding of these points.

In the plea agreement, the government agreed to recommend a sentence within the Guidelines range. The government also agreed to recommend a three-

level reduction for acceptance of responsibility.  Additionally, in the Presentence Investigation Report, the probation officer noted that had she not stipulated to the agreed drug weight of 1.5 kilograms, Bilyeu could have been held responsible for a greater quantity due to relevant conduct.  Contrary to her assertion, then, Bilyeu did benefit from her plea agreement.  With respect to her contention that her counsel was ineffective in allowing her to enter into her plea agreement, Bilyeu has failed to demonstrate either of the elements required by *Strickland*.  I will therefore grant the Government's Motion to Dismiss as to Ground Two.

In Ground Three of her 2255 Motion, Bilyeu asserts that her counsel failed to review her Presentence Investigation Report.  This assertion plainly contradicts Bilyeu's statement to the court at her sentencing hearing.  At the beginning of the hearing, I asked Bilyeu, "Have you and your lawyer read and discussed the presentence report?" *Id*. at 2.  She replied, "Yes, sir." *Id.*  Her contrary statement in her 2255 motion is not credible, and I will grant the government's Motion to Dismiss as to Ground Three.

Finally, in Ground Four of her 2255 motion, Bilyeu contends that her counsel was ineffective because he did not object to an enhancement for a leadership role under USSG § 3B1.1.  That Guidelines provision, which the Presentence Investigation Report recommended that I apply, instructs the court to increase a defendant's offense level by two levels "[i]f the defendant was an

organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)." USSG § 3B1.1(c). Again, Bilyeu's counsel did argue against this enhancement, both in written objections and orally at the sentencing hearing. Sent. Hr'g Tr. 3–5, ECF No. 717. Bilyeu's counsel argued that Cochran was merely a customer of Bilyeu and that Bilyeu was not exercising any direction or control over Cochran. I disagreed and overruled the objection, stating:

> Well, I have carefully considered the objection made by Defense counsel to the calculation of the advisory sentencing guideline range. While I understand the objection and I've carefully considered it, I believe under the circumstances I think the enhancement is appropriate, and I'm going to deny the objection for the reasons stated by the probation officer in her addendum and as stated by the Government. I think there was clearly a role here by the Defendant that fell within the confines of the [leader] enhancement guideline, and accordingly the objection will be denied.

*Id.* at 6. Again, Bilyeu has failed to show that her counsel committed any unprofessional error or that she was prejudiced by any such error, as required by *Strickland*.

Moreover, to the extent Bilyeu faults her counsel for not filing an appeal, she has not claimed that she ever directed her attorney to note an appeal. Even assuming that her contention is that the lawyer did not consult with her about an appeal, I find no basis for relief. In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court held that

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that

a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that [she] was interested in appealing.

*Id.* at 480. Bilyeu has not met the burden of establishing either scenario.

For these reasons, the United States' motion to dismiss will be granted and the § 2255 motion will be dismissed. A separate final order will be entered herewith.

DATED: January 9, 2020

/s/ JAMES P. JONES
United States District Judge